DECISION
This declaratory judgment action is before the Court for ruling on Plaintiffs' pending Motion for Partial Summary Judgment on Counts I and III of Plaintiffs' Complaint. Also before this Court are Defendants' Cross-Motion For Partial Summary Judgment on Counts I and III, Intervenor's Motion for Partial Summary Judgment on Counts I and II of Plaintiffs' Complaint, and Defendants' Cross-Motion for Partial Summary Judgment on Counts I and II. The issue before this Court arises out of the Town of Hopkinton's denial of Plaintiffs' and Intervenor's application to build a travel stop on Plaintiffs' property. Both the planning board, in denying the application, and the zoning board, in upholding the planning board, based their decisions on the fact *Page 2 
that the proposal was inconsistent with the Comprehensive Plan of Hopkinton, as amended in March of 2004. Plaintiffs and Intervenor challenge the validity of the Amended Comprehensive Plan. The issue before this Court is whether the amended plan is valid and enforceable as against the parties in this case. For the reasons set forth herein, this Court finds that it is valid.
 I. FACTS AND TRAVEL
David and Madeline Gingerella (the "Gingerellas" or "Plaintiffs") are the record owners of an eighteen (18) acre parcel of land located in the Town of Hopkinton ("Hopkinton" or "the Town"), more particularly described as Assessors Plat 7, Lot 59 (the "Property"). At all times relevant to the facts at issue in this case, the property has been zoned manufacturing.[1] While the zoning designation for the Property has not changed, its use designation in the "Future Land Use Map" of the Town of Hopkinton Comprehensive Plan has changed. In 2004, the comprehensive plan was amended twice, first in January and again in March. Under the January Amendment, the future land use designation for the Property remained as it had always been, manufacturing. The March Amendment, however, changed the Property's use designation from "manufacturing" to "mixed-use village."
After the January Amendment was adopted, it was submitted to the Director of the Rhode Island Department of Statewide Planning ("Statewide Planning"), as required by G.L. 1956 § 45-22.2-5(d). The January Amendment was approved by Statewide *Page 3 
Planning on February 13, 2004. No party to this action has challenged the validity of the January Amendment; and the validity of that amendment is not at issue in this case. What is at issue in this case, is the validity of the Town's subsequent amendment of the comprehensive plan in March of that year.
In the March Amendment, a new zoning category was created, the "mixed-use village." The land use map was also redrawn to include this new category. Under the new land use map, the area in which Plaintiff's property was located, which had previously been designated for "manufacturing" use, was re-designated for "mixed-use village" use. The March Amendment defined a mixed-use village as follows:
 i. Mixed-Use Village
 This classification identifies areas for commercial, office, retail and mixed-use residential structures situated within a small-scale village context. Large scale office developments such as office parks are permitted but will be subject to detailed site plan review and performance standards.
 (Town of Hopkinton, R.I., Community Comprehensive Plan, Land Use Element VII-25).
As required by § 45-22.2-5(d), the March Amendment was submitted to Statewide Planning for approval on April 13, 2004.[2]
On April 23, 2004, Statewide Planning sent Jason Pezullo, the Hopkinton Town Planner, a "Local Comprehensive Plan Notification of Receipt." The notification informed the Town that the Town's submission of the March Amendment was "incomplete and/or deficient." It requested *Page 4 
that several additional items be submitted in order for the State to proceed with the review process.[3]
Under § 45-22.2-9(c)(4), the Town had sixty (60) days to "correct any deficiencies reported by the director."[4] The Town never submitted the additional information that Statewide Planning requested, nor did it even respond to Statewide Planning in writing. After receiving the April 23rd notification, the Town took no action to complete the review process or otherwise comply with the requirements of § 45-22.2 et seq., one of which is that the Town "shall . . . [d]o all things necessary to carry out the purpose of this chapter." Section 45-22.2-5(a)(4).[5]
Although the Town failed to comply with the statute and submit the necessary documents within the sixty (60) days, the State also failed to comply with the statute. Section 45-22.2-9(c)(5) states that "[t]he director shall review all corrections and related material submitted by the municipality and render a finaldecision on the . . . amendment . . . within thirty (30) daysof the end of the period for correction."Id. (emphasis added). Under the statutory scheme, at the end of the sixty (60) day period for correction, the director should have rendered a final decision within thirty (30) days. Had such a final decision been rendered, either disapproving of the plan or finding that it was not properly submitted in accordance with the provisions of the chapter, the director would have been *Page 5 
compelled to "prepare, and the state comprehensive plan appeals board adopt, for the municipality in question, a comprehensive plan which satisfies the requirements of this chapter." Section 45-22.2-13(a). However, no final decision was ever rendered, and as a result, a municipally adopted comprehensive plan has remained for seven (7) years without official approval or disapproval by Statewide Planning.
With this backdrop of mutual failures by the Town and State Planning, the Gingerellas and Love's Travel Stops Country Stores, Inc. ("Loves" or "Intervenor") sought Town approval to develop their travel stop on the Gingerellas' Property. The Gingerellas and Loves's master plan application was heard before the Hopkinton Planning Board in April and May of 2009. The planning board reviewed the application for its compliance with the March Amendment to the comprehensive plan. Having been locally adopted, the Town concluded that it was required to follow that amendment under §§ 45-22.2-8(c) and 45-22.2-13(d).
In reliance upon the land use map of the March Amendment, the platting board denied the master plan for the property as being "utterly inconsistent with the mixed use village concept." (Tr. Hopkinton Planning Bd., July 1, 2009 at 142.) The applicants appealed the planning board's decision to the Hopkinton Zoning Board The zoning board, again enforcing the March Amendment and its land use map, upheld the planning board's decision. That decision has been separately appealed to this Court. In addition to the administrative appeal, the Gingerellas have also filed the instant action, seeking declaratory relief and damages against the town council, planning board members, and Hopkinton town treasurer (collectively "the Town"). *Page 6 
Counts I through III of the Gingerellas' Complaint are before this Court on motions and cross-motions for summary judgment. In Count I, this Court is asked to declare that the March Amendment is illegal, null, and void because the Town failed to correct the deficiencies in its submissions to Statewide Planning within sixty (60) days, as required by § 45-22.2-9. In Count II, this Court is asked to declare that the March Amendment is illegal, null, and void because the Town never adopted the amendment by ordinance as required by § 45-22.2-8(c). In Count III, this Court is asked to declare that the March Amendment is illegal, null, and void because the amendment did not contain an analysis of how to remedy inconsistencies between the newly created mixed-use village concept and existing zoning.
 II. STANDARD OF REVIEW 1. Summary Judgment
"Pursuant to Rule 56(c), a motion for summary judgment is appropriately granted `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Carrozza v. Carrozza,944 A.2d 161, 164 (R.I. 2008) (quoting Super. R. Civ. P. 56(c)). "When adversary parties file motions for summary judgment, this Court `shall treat the relevant allegations of both parties in the most favorable light insofar as they oppose the respective motions for summary judgment.'" Derderian v. Essex Ins. Co.,2009 WL 3328490 at *3 (R.I. Super. Ct. June 25, 2009) (Gibney, J.) (quoting RIH Med. Found., Inc. v. Nolan,723 A.2d 1123, 1125 (R.I. 1999). "[W]hen both parties move for summary judgment and no *Page 7 
genuine issues of material fact exist, this Court must review the record to determine if either party is entitled to judgment as a matter of law." Id. (citing Dubis v. East Greenwich FireDist., 754 A.2d 98, 100 (R.I. 2000)).
Statutory interpretation is a matter of law for which summary judgment may be properly granted. See Sorenson v. ColibriCorp., 650 A.2d 125, 132 (R.I. 1994). When the language of a statute is clear and unambiguous, the Court gives "the words of the enactment their plain and ordinary meaning." Waterman v.Caprio, 983 A.2d 841, 844 (R.I. 2009). In such a situation, "there is no room for statutory construction," and the Court "must apply the statute as written.'" Id. (quoting State v.Greenberg, 951 A.2d 481, 489 (R.I. 2008)).
 2. Declaratory Judgment
"Rhode Island's Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9, gives the Superior Court broad discretion to `declare rights, status, and other legal relations whether or not further relief is or could be claimed.'"Arnold v. Lebel, 941 A.2d 813, 817 (R.I. 2007) (quoting § 9-30-1). Under the Act, any person
 whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status, or other legal relations thereunder. Section 9-30-2.
"This power is broadly construed, to allow the trial justice to `facilitate the termination of controversies.'" BradfordAssociates v. Rhode Island Div. of Purchases,772 A.2d 485, 489 (R.I. 2001) (quoting Capital Properties,Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999)). While the Superior Court does have broad powers to declare rights, its "decision *Page 8 
to grant or to deny declaratory relief under the [UDJA] is purely discretionary." Sullivan v. Chafee,703 A.2d 748, 751 (R.I. 1997).
 III. ANALYSIS 1. Count I A. The Statutory Framework
The General Assembly enacted § 45-22.2, the Comprehensive Planning and Land Use Regulation Act ("CPLURA"), to establish a set of uniform standards and procedures to be followed in effecting comprehensive planning throughout the State. Section 45-22.2-3(b). A major element of this system is that locally adopted comprehensive plans and amendments to plans, must be submitted to State Planning for review and approval. Sections 45-22.2-5(c), (d). By enacting individual time provisions, as well as a maximum period, the chapter establishes a clearly defined time frame during which the review process is to take place.
 (1) Comprehensive plans or amendments shall be submitted to the director within thirty (30) days of adoption by the municipal legislative body. . . .
 (2) Within fifteen (15) days of the receipt of a comprehensive plan the director shall give public notice of the initiation of review, and shall solicit comments from. . . . The comment period shall extend for thirty (30) days after the public notice.
 (3) Review of the plan, update, or amendment, and comments by the director shall be completed and forwarded to the municipality as follows:. . . .[setting variable time frames depending on how many elements of the comprehensive plan have been amended.]
 (4) Municipalities shall correct any deficiencies reported by the director within sixty (60) days of receipt of the director's review and comments. . . .
 (5) The director shall review all corrections and related material submitted by the municipality and render a final *Page 9 decision on the plan, update, or amendment or parts of the plan within thirty (30) days of the end of the period for correction. . . .
 (6) The review process stated in subdivisions (1) through (5) of this subsection shall be carried out within a maximum time period of two hundred fifty-five (255) days under subdivision (3)(i), one hundred sixty-five (165) days under subdivision (3)(ii), or the appropriate maximum period [if extended by mutual agreement in writing] under subdivision 3(iv) or (4).
 Sections 45-22.2-9(c)(1-5) (emphasis added).
Our Supreme Court has "long held that the use of the word `shall' denotes `something mandatory or the imposition of a duty.'"City of Providence v. Estate of Tarro,973 A.2d 957, 605 (R.I. 2009) (quoting Castelli v. Carcieri,961 A.2d 277, 284 (R.I. 2008)) (internal quotations omitted). Furthermore, in determining whether a statute's provisions are mandatory or directory, "[t]he general rule is that statutory requirements comprising the essence of a statute are mandatory."Town of Tiverton v. Fraternal Order of Police,118 R.I. 164, 372 A.2d 1275 (1977) (citing 2A Sutherland,Statutory Construction § 57.03 at 416 (4th ed. Sands 1973)).
An express intention of the General Assembly, stated in the CPLURA, is to "[e]stablish, in each municipality, a program of comprehensive planning that is implemented according to thestandards and schedule contained in this chapter," and to "[e]stablish standards and a uniform procedure for the review andapproval of municipal comprehensive plans. . . ." Sections 45-22.2-3(b)(1), (4) (emphasis added). In effectuating this intent, the legislature enacted the individual and maximum time frames set forth supra. In consideration of the mandatory language in which the statutory *Page 10 
provisions are phrased, the legislature's inclusion of maximum time frames[6], and the legislature's stated intents of the statute, this Court finds that the CPLURA imposed mandatory duties upon Statewide Planning and the municipalities to carry out the planning and review process in accordance with the schedules set forth in the statute.
 B. Failure To Comply With The Statute
It is undisputed that the Town failed to comply with the requirement of § 45-22.2-9(c)(4), and correct the stated deficiencies within sixty (60) days of receiving notice from Statewide Planning. The parties have dedicated significant resources in advocating their positions for what the effect of such a failure should be. The Town's failure, however, is not the only failure from which current situation has arisen, nor, in fact, does this Court find it to be the operative one.
Section 45-22.2-9(c)(5) requires:
 The director shall review all corrections and related material submitted by the municipality and render a final decision on the plan, update, or amendment or parts of the plan within thirty (30) days of the end of the period for correction. Id. (emphasis added).
This Court takes particular notice of the fact that the thirty (30) days runs from the "end of the period for correction," not from the date upon which corrections were submitted. There is nothing within this statutory language that requires the submission of corrections as a condition precedent to the issuance of a final decision by the director. The statute *Page 11 
requires a final decision be rendered by the director within thirty (30) days of the end of the period for correction, whether or not any corrections are submitted by the Town.
It is undisputed that the director never issued a final decision. The March amendment is in "bureaucratic limbo," yet, that status was not caused solely by the Town's failure to submit corrections.
 C. The Validity of the March Amendment
As a result of the director's failure to issue a final decision, a locally adopted comprehensive plan has remained, without approval or disapproval at the state level, for seven (7) years. The legislature, seeking to ensure efficiencies by enacting the CPLURA, never intended such a void to exist under the statute. In fact, the Gingerellas and Loves are correct in pointing out that the current situation is precisely the type of situation the CPLURA was enacted in order to prevent. They submit that because permitting such a situation to exist does injury to the clear intent of the statute, this Court should read into the statute a provision that will give teeth to the legislative intent — to, in essence, create a statutory sanction which the legislature never provided for. They ask this Court to declare that a comprehensive plan which a municipality has adopted and submitted to Statewide Planning, but has been neither approved nor disapproved by the State within the maximum time frame set forth in § 45-22.2-9(c)(6), is rendered null and void both within the municipality and statewide.[7] *Page 12 
Nothing within the CPLURA suggests the legislature provided for such a result. On the contrary, the statute itself includes provisions which mandate the opposite result.See §§ 45-22.2-8(c),13(d).
 A comprehensive plan is adopted, for the purpose of conforming municipal land use decisions and for the purpose being transmitted to the director for state review, when it has been enacted by the legislative body of the municipality pursuant to the manner provided for the adoption of ordinances in the municipality's legislative or home rule charter. . . . The comprehensive plan of a municipality shall not take effect for purposes of guiding state agency actions until approved by the director, comprehensive plan appeals board, or the Rhode Island Supreme Court. Id. (emphasis added).
Providing further edification is § 45-22.2-13(d), which specifically details the effect of a locally adopted comprehensive plan that has neither been approved nor disapproved by the state. That section provides:
 (d) For communities with municipally adopted comprehensive plans which have not received state approval pursuant to this chapter, these municipalities shall conform their land use decisions to the locally adopted comprehensive plan until the time state approval is granted. Id. (emphasis added).
The Gingerellas and Loves ask this Court to declare that a municipally adopted comprehensive plan is null and void without State approval, when the clear language of the statute dictates otherwise. Arguing that reliance on the above-quoted sections would *Page 13 
lead to an absurd result that would defeat the intention of the act, they ask this Court to look beyond the clear language expressed by the legislature.
When the language of a statute leads to an absurd result, they argue, the Court must consider the statute as a whole, view specific sections in the context of the statutory scheme, determine the "true import of statutory language," and apply the statute in such a manner as to effectuate the act's purpose. The Gingerellas and Loves rely on Skaling v. Aetna Ins. Co.,742 A.2d 282 (R.I. 1990) and Ryan v. City of Providence,2011 WL 38401 (R.I. 2011) for support.
Here, the Gingerellas and Loves ignore the explicit remedy set by the statute. They fail to note that the incongruity they reference was compounded by the failure of the State Administrative Agency to adhere to the statutory directives. The CPLURA provides that a final decision will be rendered within thirty (30) days of the end of the period for corrections. Therefore, under the statutory scheme, as explained in footnote 7 supra, a municipality's failure to follow through with the state approval process will likely result in a final decision being rendered against them.
Furthermore, the CPLURA already provides a specific procedural remedy by which a locally adopted comprehensive plan can be rendered void. Sections 45-22.2-13(a) and (b) state:
 a. In the event a municipality fails to submit a comprehensive plan in accordance with the provisions of this chapter, or the director disapproves a comprehensive plan and that decision is affirmed by the board, the director shall then prepare, and the state comprehensive plan appeals board adopt, for the municipality in question, a comprehensive plan which satisfies the requirements of this chapter.
 b. The comprehensive plan appeals board shall adopt a plan within one hundred eighty (180) days of the *Page 14 
decision of the board unless the municipality appeals the decision of the board within thirty (30) days to the supreme court.
These subsections mandate distinct procedural requirements that State Planning must follow to supercede a locally adopted plan with a state imposed one. They also create a right of direct appeal to the Supreme Court. To declare that the CPLURA should be read so as to provide that a municipally adopted local comprehensive plan becomes void upon expiration of the maximum time frame set forth in § 45-22.2-9(c)(6) would be to judicially impose a supplementary rule to accomplish a similar end — render the locally adopted comprehensive plan void. Not only is this supplementary procedure unnecessary, it would also usurp the authority of the administrative agency, by removing the director and state comprehensive plan appeals board from the process. Given these concerns, this Court refuses to read the statute in such a manner as to contradict its clear language and subvert its procedural framework.
When a statute establishes a procedure by which a locally adopted comprehensive plan can be voided, this Court is disinclined to read into that statute a new rule which accomplishes the same end, especially when the statute's explicit intent includes the establishment of a "uniform procedure for the review and approval of municipal comprehensive plans." Section 45-22.2-3(b)(4). To the extent that the Gingerellas and Loves desire to bring the March Amendment out of the bureaucratic limbo which it has sat for the last seven years, they opted not to seek a writ of mandamus to compel the director to render the final decision he was required to render within thirty (30) days of the expiration of the period for corrections under § 45-22.2-9(c)(5). *Page 15 
For the reason set forth above, this Court denies Plaintiffs' and Intervenor's Motions for Partial Summary Judgment on Count I and grants Defendants' Cross-Motion for Summary Judgment on Count I.
 2. Count II
Loves has moved, and the Town cross-moved, for summary judgment on Count II of the Gingerellas' Complaint. At issue is whether the March Amendment was passed in accordance with § 45-22.2-8(c):
 A comprehensive plan is adopted, for the purposes of conforming municipal land use decisions and for the purpose of being transmitted to the director for state review, when it has been enacted by the legislative body of the municipality pursuant to the manner provided for the adoption of ordinances in the municipality's legislative or home rule charter. Id.
Section 3200 of the Hopkinton Town Charter, entitled "Ordinances," sets the manner in which the Town of Hopkinton is required to pass ordinances. See Town of Hopkinton, R.I., Town Charter § 3200 et seq. Loves argues that "pursuant to the manner provided for the adoption of ordinances" is the functional equivalent of "in the identical manner as provided for the adoption of ordinances" which should be interpreted so as to require that the plan be passed "as an ordinance" or "by an ordinance." Reading the statute as such, Loves considers the fact that the Town's failure to pass an ordinance adopting the March Amendment renders the Amendment legally defective, null and void.
As discussed supra, when a statute is clear and unambiguous, the Court gives "the words of the enactment their plain and ordinary meaning." Waterman, 983 A.2d at 844. In such a situation, "there is no room for statutory construction," and the Court "must *Page 16 
apply the statute as written." Id.
(quoting Greenberg, 951 A.2d at 489). The statute clearly calls for the comprehensive plan to be adopted "pursuant to themanner provided for the adoption of ordinances." Section 45-22.2-8(c) (emphasis added). This is not the equivalent of "by ordinance." Had it been the intent of the legislature to require that comprehensive plans be adopted or amended only by or through the passage of an ordinance, the legislature was certainly capable of imposing that requirement. Rather, it appears that it was the intent of the legislature to ensure that the same procedures followed for the adoption of ordinances — vis-á-vis notice, hearing, voting,et cetera — were followed when a municipality wished to adopt or amended its comprehensive plan.
Applying the statute as written, there is no requirement that an amendment to the comprehensive plan be passed by or through an ordinance. Therefore, the fact that the March Amendment was not adopted by or through an ordinance does not render it invalid, null, or void. However, neither Loves nor the Town has pointed to sufficient evidence to establish precisely what procedures were followed in the adoption of the March Amendment. Reluctantly, the Court must recognize that material issues of fact remain as to whether the amendment was passed in the "manner provided for the adoption of ordinances," and both motions for summary judgment must be denied.
 3. Count III
The parties have moved and cross-moved for summary judgment on Count III. In Count III, the Gingerellas ask this Court to declare that the March Amendment is illegal, null and void because it fails to include the required analysis of how to remedy inconsistencies between the amended comprehensive plan and existing zoning. The *Page 17 
Town has cross-moved, arguing that the mixed-use village designation is not inconsistent with a manufacturing use designation, and to the extent that an analysis of how to remedy inconsistencies is required, the detailed descriptions of both designations are sufficient to satisfy the requirements of the statute.
As explained supra, a court's "decision to grant or to deny declaratory relief under the [UDJA] is purely discretionary."Sullivan, 703 A.2d at 751. In this instance, the parties are asking this Court to analyze the sufficiency of the March Amendment, an analysis normally done by Statewide Planning, an administrative agency particularly suited to making these types of determinations. Furthermore, a party disputing the decision of Statewide Planning has a right of direct appeal to the State Supreme Court. Under the Act, this Court is empowered to decline to issue a declaratory judgment. Accordingly, summary judgment on Count III is denied.
 IV. CONCLUSION
The Gingerellas' Motion for Partial Summary Judgment on Count I is denied. Loves' Motion for Partial Summary Judgment on Count I is denied. The Town's Cross-Motion for Partial Summary Judgment on Count I is granted. Loves' Motion for Partial Summary Judgment on Count II and the Town's Cross-Motion for Partial Summary Judgment on Count II are both hereby denied, without prejudice. The Gingerellas' Motion for Partial Summary Judgment on Count III is denied. The Town's Motion for Partial Summary Judgment on Count III is denied.
[1] It is undisputed that the Zoning Ordinance for the Town of Hopkinton continues to classify the parcel as "manufacturing" zone. (See Def.'s Resp. Pl.'s First Req. Admissions, Nos. 6-8.)
[2] An argument has been made that the March Amendment should be null and void because, under G.L. § 45-22.2-9(c)(1), the Town was required to submit it to Statewide Planning within thirty (30) days of adopting it. The amendment was submitted thirty-six (36) days after adoption. This Court is reluctant to find that a late submission renders a plan null and void, especially where the statute identifies no sanction in the event of a late submission. The parties have not pressed this argument, and this Court does not find it necessary to address it further.
[3] The notification requested the following items: (1) a "Request for State Review" form, (2) the minutes of the Planning Board and Town Council public hearings, (3) a copy of the Town Council ordinance adopting the amendment, and (4) copies of any informative communications amongst the Town Council, Planning Board, and Town Planner.
[4] G.L. 1956 § 45-22.2-9(c)(4) permits the municipality and the director, upon execution of a written agreement, to extend this sixty (60) day period. There has been no evidence to establish that any such extension was granted in this case.
[5] In addition, the Town never took action to amend its Zoning Map to rezone the Property as "Mixed-Use Village," nor did it add a reference to "Mixed-Use Village" in the zoning districts of the Hopkinton Zoning Code.
[6] See Town of Tiverton,118 R.I. at 165, 372 A.2d at 1276 (holding a minimum time requirement mandatory because "to read this language as being directory would render the minimum requirement meaningless."). Likewise here, to read the maximum requirement as directory would render it meaningless. This is especially evident in the context of a statute intended to establish a uniform procedure to be followed statewide.
[7] The Gingerellas and Loves, in focusing on the Town's failure, view the proposed sanction to be that a municipality failing to submit corrections within the sixty (60) days provided for by statute, will have its comprehensive plan nullified. As discussedsupra, this Court does not find that the Town's failure was the operative failure in this case. As it exists, the statute already provides for a sanction for a municipality which fails to submit corrections within sixty (60) days — the director is to render his or her final decision on the submission as it exists, without corrections. Perhaps this will result in the ultimate disapproval of the local plan and imposition of a state created plan, but the statute includes an established procedure for that contingency, the first step of which is the rendering of a final decision. To impose the sanction that Loves and the Gingerellas propose would be to replace the intricate statutory procedure with a judicially created one.
 *Page 1